Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, September 12, 2016 1:27:41 PM

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                )
                                      )
D & R DISTRIBUTORS,                   )      Case No. 14-bk-00565
                                      )
            Debtor.                   )      Chapter 7
                                      )
_____ )

## MEMORANDUM OPINION

Thomas Fluharty, the Chapter 7 Trustee administering the Bankruptcy estate of D&R Distributors (the "Debtor") seeks to compromise a claim against the estate filed by Domenick Marrara ("Domenick"). Creditors Rocco Marrara ("Rocco")[1] and Mary Lou Marrara[2] (together the "Objecting Creditors") object to the motion to compromise based upon the settlement not being in bankruptcy the estate's best interest. The court held a telephonic hearing on the matter on May 17, 2016, where it requested additional briefing regarding the potential applicability of the doctrine of setoff and took the matter under advisement.

For the reasons stated herein, the court finds that the trustee executed sound business judgment in negotiating a settlement with Domenick. The court will thus grant the Trustee's motion to settle.

## I. BACKGROUND

Domenick, Rocco, and other members of the Marrara family are shareholders of the Debtor and several related business entities. Some, if not all, of the Marraras are now creditors of the Debtor. The Trustee's proposed settlement stems from two claims relating to Domenick's involvement with the Debtor: a claim filed by Domenick against the Debtor's estate and a

---

[1] Rocco Marrara appears both individually and in his capacity as trustee of the Mary Jane Marrara Irrevocable Trust.

[2] Mary Lou Marrara appears in her capacity as executrix of the estate of Robert S. Marrara.

contingent claim against Domenick that the Trustee could pursue on behalf of the Debtor. Domenick filed an unsecured $28,669.03 claim against the Debtor's estate for prior shareholder loans he made to the Debtor. Neither the Trustee nor the Objecting Creditor contend that that claim should be disallowed. The Trustee believes, however, that he possesses a conversion claim on behalf of the Debtor that would entitle him to $10,015.68 in damages. The Trustee has not yet filed this claim.

The Trustee and Domenick now propose a settlement whereby Domenick will waive his claim in the sum of $28,669.03 in exchange for the estate waiving its claim against him in the sum of $10,015.68. The Objecting Creditors allege that the proposed settlement is not in the best interest of the estate. Specifically, they accept the Trustee's valuation of the claim against Domenick at $10,015.68, but reduce the value of the claim filed by Domenick to not more than $1,121.03.[3] Because they view the proposed settlement as effectuating an approximately $9,000 loss to the estate, they assert that the settlement cannot meet the standards set forth in Rule 9019 and should thus be rejected.[4]

The Trustee responded to the Objecting Creditor by asserting that the estate would incur substantial costs and risks if it were to bring the potential claim against Domenick. Specifically, the Trustee asserts that "when factoring in costs, legal fees, and the uncertainties of liability, [litigation of the claim] is not likely to result in a net benefit of the estate." Moreover, they assert litigation would result in diminution of value to the estate if the Trustee did not prevail in his case against Domenick. Thus, the Trustee asserts that, in his business judgment, he believes the settlement is in the best interest of the estate.

## II. ANALYSIS

Rule 9019(a) provides that the court may approve a settlement "on motion by the Trustee and after notice and a hearing." In determining whether to approve a settlement, judges are to

---

[3] The Objecting Creditors determined this figure by seeking to calculate the payout to unsecured creditors. Specifically, they allege that there are $2,419,074.97 in general unsecured claims but that the Trustee will only distribute $95,000 to such creditors. Thus, they assert that general unsecured creditors will be paid approximately 3.91 percent of what they are owed. They thus reduce the value of Domenick's claim from $28,669.03 to $1,121.03.

[4] The Objecting Creditors additionally set forth an argument that the settlement should be rejected because it fails to address a separate potential claim of the Debtor against Domenick. Because that claim is unaffected by the settlement, the court will not consider that argument.

2

make an informed, independent judgment about the fairness and equity of the settlement. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Although compromises are favored in bankruptcy, courts are not "to give rubber stamp approval" of settlements. *Official Comm. of Unsecured Creditors v. White Plains Joint Venture (In re Bond)*, 1994 U.S. App. LEXIS 1282, at *2 (4th Cir. Jan. 26, 1994). Moreover, the proponent of the settlement bears the burden of persuasion. *In re Frye*, 216 B.R. 166, 174 (Bank. E.D. Va. 1997).

In evaluating a proposed settlement, courts review Rule 9019 motions to compromise in light of four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors." *In re Buffalo Coal Co.*, No. 06-366, 2006 WL 3359585, at *3 (Bankr. N.D. W. Va. Nov. 15, 2006) (citing *Fry's Metals, Inc. v. Gibbons (In re RFE Industries Inc.)*, 283 F.3d 159, 165 (3rd. Cir. 2002); *see also Anderson*, 390 U.S. at 424-25 (stating that, in determining whether a compromise is fair and equitable, a bankruptcy judge should form "an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained . . . . Basic to this process in every instance, of course, is the need to compare the terms of the compromise against the likely rewards of litigation."). Nonetheless, "the court does not substitute its own judgment as to what would be best for the estate but rather determines if the trustee's proposed agreement falls within reasonable judgment under the circumstances of the case." *Friedman v. Riffin (In re Riffin)*, 2010 Bankr. LEXIS 2757, at *10-11 (Bankr. D. Md. Aug. 17, 2010) (citing *Morris v. Nat'l Union Fire Ins. Co. (In re Eastwind Group, Inc.)*, 303 B.R. 743, 750 (Bankr. E.D. Pa. 2004) ("the court should avoid second-guessing the Trustee . . . but rather should endeavor to ascertain whether the terms of the Trustee's proposed settlement fall below the lowest range of reasonableness."). Furthermore, a full evidentiary hearing is not a prerequisite to approving a proposed settlement, particularly because such requirement would undermine the purpose of the settlement. *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994).

In this case, when considering the four factors listed above, the Trustee's proposed settlement surpasses the minimal standards of reasonableness that are required. First, as the Trustee asserts, the probability of successfully litigating the conversion claim is unclear.

Domenick asserts that, should a claim be brought, he will raise various defenses, including that the claim is barred by the statute of limitations. As the underlying actions to the conversion claim occurred in 2011 and neither the Debtor nor the Trustee have brought a claim to date, this defense alone is enough to raise questions about the potential success of litigating the alleged conversion. Moreover, Domenick's claim against the estate for $28,669.03 has not been objected to, and according to the parties, no reason for objection to his claim exists. Therefore, the risk associated with litigation supports the Trustee's proposed settlement.

The second factor involving challenges in collection appears to be neutral as to whether it supports settling or litigating the potential claim. The Objecting Creditors assert that Domenick has ample funds to pay a judgment should the Trustee succeed in litigation. This assertion was not challenged by the Trustee or Domenick. However, Domenick may be able to request that the judgement against him be setoff from the outstanding debt the estate owes to him.[5] Furthermore, costs associated with collection, even from a solvent debtor, cannot be ignored. Therefore, although it appears that Domenick has funds from which the Trustee could collect a judgment, that process would require the estate to incur additional expenses. Additionally there is some risk that the doctrine of setoff would apply, which could require additional litigation and impair the Trustee's collection of cash for administration.

When considering the complexity of the potential litigation, settlement becomes less crucial, thus the third factor weighs in favor of the Objecting Creditors. The underlying dispute involves relatively few legal questions. Moreover, many of the facts appear to be either undisputed or well-documented. Nonetheless, Domenick does assert that he has several defenses to raise such that litigation may require more than establishing a *prima facie* case for conversion.

The final factor weighs in favor of approving the Trustee's proposed settlement. The majority of the Objecting Creditor's argument focuses on the harm the estate will suffer should the Trustee's proposed settlement be approved. According to the Objecting Creditors, Domenick's claim should be valued at approximately $1,200 because unsecured creditors are currently projected to receive a payout of approximately four percent. The Objecting Creditors further

---

[5] The court requested that the parties submit additional briefing on the subject of setoff and the parties obliged the court's request. Though the court analyzed the arguments set forth in those briefs, it is not persuaded that the issue of setoff is determinative nor is it clear, at this time, whether Domenick would have a valid claim to setoff the debts from one another.

accept the Trustee's assertion that the potential claim against Domenick is worth $10,015.68. Thus, according to the Objecting Creditors the settlement sets the estate back nearly $9,000.[6] This argument is unpersuasive for several reasons.

First, the Objecting Creditors fail to consider the administrative costs associated with litigating the claim against Domenick. The estate would need to hire counsel to bring suit against Domenick, which would require paying either hourly fees or a contingency fee, sharply reducing the amount of benefit any creditors would see from recovery on the claim. Furthermore, the Objecting Creditors assume that all claims currently filed against the estate will become allowed claims, such that the payout to unsecured creditors is capable of calculation at this time. At this time, the claims bar date has run, so the parties know the maximum value of claims in the Debtor's case. Moreover, the Trustee provided an estimate of the value of the property to be distributed. Using this information, the Objecting Creditors were able to approximate the minimum distribution to unsecured creditors, and thus the minimum repayment Domenic would receive for his claim. However, as the Trustee argues, the Objecting Creditors do not know which claims will be allowed at this point. Should substantial claims be disallowed, the payout to unsecured creditors would increase drastically.[7] Finally, the Objecting Creditors neglect to contemplate that the estate would bear administrative costs without any new value coming into the estate should the Trustee litigate and lose or fail to collect on the conversion claim.

The standard set forth in the caselaw requires the court to consider whether the Trustee's proposed settlement meets the lowest range of reasonableness. The settlement before the court contemplates waiving a $28,669.03 claim against the estate in exchange for waiving a $10,015.68 claim the estate could bring against Domenick. While the Objecting Creditors presented a scenario where the settlement could result in a net loss for the estate, the Trustee and Domenick set forth

---

[6] Taking the Objecting Creditors' calculation one step further, unsecured creditors would see an increased distribution of only 0.3 percent if the settlement is denied, the Trustee wins on the conversion claim, no claims are disallowed, and the estate incurs no new administrative expenses in litigating the claim. For the Objecting Creditors specifically, this would result in a maximum, increase of $3.99 to Rocco, $52.62 to the Mary Jane Marrara Revocable Trust, and $94.62 to the estate of Robert Marrara.

[7] As the value of Domenic's claim is tied to the percentage distribution general unsecured creditors receive, while the bankruptcy estate's contingent claim against Domenick is for a fixed value, a decrease in allowed claims would increase the desirability of the proposed settlement.

5

ample scenarios where the estate would benefit from this settlement. Thus, the Trustee demonstrated that the proposed settlement is based in reason sufficient to satisfy the test required under Rule 9019.

For the reasons set forth herein, the court will enter a separate order granting the Trustee's motion to compromise and overruling the Objecting Creditors' objection.